UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NERYS MANCEBO,
                              Plaintiff,

                -v-

COMMISSIONER OF SOCIAL
SECURITY,
                              Defendant.

16-CV-6400 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Plaintiff Nerys Mancebo, proceeding *pro se*, challenges her denial of social security disability benefits. The Commissioner of Social Security moves for judgment on the pleadings. For the reasons that follow, the motion is denied.

I.     **Background**

      Mancebo was born on November 29, 1961. (Dkt. No. 9 ("Tr.") at 80.) Her last job was as a case manager, orientation representative, and retention specialist for a health insurance company. (Tr. at 64, 80.) She was laid off in 2012 after excessive absences stemming from pain related to her disability. (Tr. at 64, 68–69, 77.) A number of doctors have examined Mancebo since 2012. Among those medical professionals, there is broad consensus that Mancebo suffers from fibromyalgia and other ailments. (*See* Tr. at 51, 247–57, 274–82, 283–88, 346–56.)

      Mancebo applied for social security benefits in 2013, but her application was denied. (Tr. at 89.) She thereafter requested and received a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 61–79.) At the hearing, Mancebo testified about continual pain in her knees, back, and hips. (Tr. at 65–66.) She also spoke of experiencing flare-ups of her fibromyalgia, which left her incapacitated for days at a time. (Tr. at 69–72.) She also testified that her flare-

ups prevent her from coming to work on a regular basis and maintaining long-term employment. (Tr. at 77.)

In 2015, ALJ Michael Friedman ruled that Mancebo was not eligible for disability benefits. Although the ALJ concluded that Mancebo had severe impairments that created "more than minimal limitations" on her ability to work, he also concluded that Mancebo had the capacity to perform "light work . . . with a sit/stand option" that involves "simple, routine, repetitive type tasks and require[s] only occasional contact with supervisors, coworkers, and the public." (Tr. at 51–52.) And because the ALJ found that such jobs exist in significant numbers in the national economy, he concluded that Mancebo was not eligible for disability benefits. (Tr. at 55–56.)

A key conclusion by the ALJ was that "[Mancebo's] statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." (Tr. at 52.) In reaching this conclusion, the ALJ specifically relied on three medical opinions.

<u>Dr. Chen</u>: Dr. Charlie Chen had been seeing Mancebo about once a month at the time of the hearing before the ALJ. (Tr. at 70–71.) Dr. Chen's written medical opinion concluded that Mancebo's symptoms would frequently and significantly interfere with her ability to work, and he diagnosed a number of restrictions on Mancebo's ability to sit, stand, move, and concentrate in the workplace. (Tr. at 357–58.) Dr. Chen noted that, in his opinion, Mancebo was unable to physically carry out the demands of a full work week, and would require rest breaks and frequent days off due to flare-ups. (Tr. at 357–60.) The ALJ gave Dr. Chen's opinion "little weight" because his conclusions "are not supported in the record," and because "Dr. Chen has provided no treatment records to support his findings." (Tr. at 54.)

2

Dr. Tedoff: Dr. Howard Tedoff is a psychologist who examined Mancebo in 2014. (Tr. at 284.) Dr. Tedoff concluded that Mancebo was not relating well with others and would have a hard time dealing with stress in the workplace. (Tr. at 287.) Dr. Tedoff noted that the results of his examination were "consistent with psychiatric difficulties" that, in concert with her physical issues, would "interfere[] with [Mancebo's] ability to function in the workplace on a daily basis." (*Id.*) The ALJ gave Dr. Tedoff's opinion "partial weight" because he "appears to have relied solely on [Mancebo's] subjective complaints regarding her physical abilities." (Tr. at 53.)

Dr. Teli: Dr. Iqbal Teli examined Mancebo in 2014, and assessed that she had a "mild restriction for prolonged standing and walking" but was not in "acute distress." (Tr. at 291–92.) The ALJ gave Dr. Teli's opinion "significant weight," because "his examination was thorough and revealed only mild restrictions, which would not prevent [Mancebo] from performing light work on a sustained basis." (Tr. at 54.)

Mancebo requested review of the ALJ's decision, which the Social Security Appeals Council denied. (Tr. at 1.) This suit followed. After the government moved for judgment on the pleadings, Mancebo did not file an opposition brief, and the Court therefore deemed the motion unopposed. (Dkt. No. 13.)[1]

## II. Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind

---

[1] Mancebo filed a letter with the Court (Dkt. No. 14), and appeared in person at an oral argument held on July 19, 2017. The Court takes both into account for purposes of deciding this motion.

3

might accept as adequate to support a conclusion.'" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A court may not substitute its judgment for the Commissioner's "even if it might justifiably have reached a different result upon a *de novo* review." *DeJesus v. Astrue,* 762 F.Supp.2d 673, 683 (S.D.N.Y.2011) (quoting *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991)).

Courts must also afford *pro se* plaintiffs "special solicitude." *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994). When a plaintiff proceeds *pro se*, the court should "read his supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citing *Mikinberg v. Baltic S.S. Co.*, 988 F.2d 327, 330 (2d Cir. 1993)). "Even where a motion for judgment on the pleadings is unopposed, the Court must still review the entire record and ensure that the moving party is entitled to judgment as a matter of law." *Graham v. Comm'r of Soc. Sec.*, No. 16 Civ. 142, 2017 WL 1232493, at *1 (E.D.N.Y. Mar. 31, 2017).

## III. Discussion

As Mancebo is a *pro se* plaintiff and has not filed an opposition brief, the Court focuses on the strongest argument in her favor presented by the record. *See Burgos*, 14 F.3d at 790. The Court identifies two issues in the proceedings below: (1) the ALJ's opinion did not address Mancebo's claim that her flare-ups prevented her from maintaining a job, and (2) the ALJ's opinion improperly discounted the opinion of Mancebo's treating physician.

First, the ALJ's opinion focuses almost exclusively on Mancebo's physical condition at the time of her various doctor visits, but fails to address Mancebo's central claim: that her debilitating flare-ups prevent her from holding down a job. During the hearing before the ALJ, Mancebo repeatedly stressed that the flare-ups were her biggest obstacle to consistent employment. (*See, e.g.*, Tr. at 77 ("That's why they let me go from my job. . . . I can be

4

functional a couple of days and the[n] my flare-ups come[] . . . .").) Yet the ALJ's opinion mentions flare-ups only once in passing when it describes (and dismisses) Dr. Chen's opinion. (Tr. at 54.)

Instead of discussing Mancebo's ability to maintain continuous employment, the ALJ's opinion focuses primarily on how Mancebo appeared at specific medical examinations. (*See e.g.*, Tr. at 53 (mentioning that, during a 2013 doctor visit, Mancebo showed "good general state of health, with no weight gain or loss, no weakness, no fatigue, no fever, good exercise tolerance, and is able to do usual activities").) Indeed, the ALJ gave the most weight to Dr. Teli's opinion, which focuses almost exclusively on how Mancebo presented at one visit and contains virtually no forward- or backward-looking findings. (*See* Tr. at 290–92.) The ALJ's opinion, in discussing Dr. Teli's findings, likewise focuses, for example, on how Mancebo "needed no help changing for the exam, getting on/off the exam table, and was able to rise from the chair without difficulty," and continues by describing the condition of her spine, hips, limbs, and joints. (Tr. at 53–54.) The ALJ appears to have concluded, without explanation, that Mancebo's adequate physical shape during one doctor visit contradicts her claim that her periodic flare-ups prevent her from consistently working.

Second, the ALJ improperly discounted the opinion of Dr. Chen, Mancebo's treating physician.[2] When making social security determinations, ALJs are bound by the "treating

---

[2] The record is not entirely clear on whether Dr. Chen is Mancebo's primary care physician in the formal sense. However, the relevant regulation does not require the treating physician to be a primary care physician. Instead, "treating source" is defined as "[an] acceptable medical source who provides . . . medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the patient]." 20 C.F.R. § 404.1527(a)(2). This requirement is generally satisfied when the patient sees the doctor "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition[]." *Id.* Mancebo testified that she saw Dr. Chen about once a month (Tr. at 70–71), which suffices to make him a treating physician.

5

physician rule." *Kessler v. Colvin*, No. 14 Civ. 8201, 2015 WL 6473011, at *4 (S.D.N.Y. Oct. 27, 2015). The rule mandates that "[t]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (alteration in original) (quoting 20 C.F.R. § 404.1527(d)(2)); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106–07 (2d Cir. 2003) (holding that an ALJ erred in not giving a treating physician's diagnosis of fibromyalgia controlling weight). The reason for this rule is that treating physicians offer a "unique perspective to the medical evidence" that cannot otherwise be obtained from the record. 20 C.F.R. § 404.1527(c)(2).

Here, the ALJ summarily discounted Dr. Chen's opinion—the only medical opinion discussing the issue of flare-ups—on the basis that Dr. Chen's conclusions "are not supported in the record," because "Dr. Chen has provided no treatment records to support his findings." (Tr. at 54.) However, "[i]n order to override the opinion of the treating physician, [the Second Circuit has] held that the ALJ must explicitly consider, *inter alia*: (1) the frequently, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). The ALJ's opinion does not do so. "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Aronis v. Barnhart*, 2003 WL 22953167, at *5 (S.D.N.Y. Dec. 15, 2003) (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)) (internal quotation marks omitted).

Moreover, even if Dr. Chen's opinion required more corroboration, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). "If the ALJ is not able to fully credit a treating physician's opinion because the medical records from the physician are incomplete or do not contain detailed support for the opinions expressed, the ALJ is obligated to request such missing information from the physician." *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 428 (S.D.N.Y. 2010). Here, again, it appears that the ALJ did not do so.

The flip side of this problem is that the two opinions on which the ALJ *did* rely—those by Drs. Teli and Tedoff—resulted from one-time consultative visits, performed on the same day, in connection with Mancebo's social security application. However, "a consulting physician's opinions or report should be given limited weight . . . because 'consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day.'" *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990) (citation omitted) (quoting *Torres v. Bowen*, 700 F. Supp. 1306, 1312 (S.D.N.Y. 1988)); *see also Kessler*, 2015 WL 6473011, at *4 ("[*Cruz*'s] admonition is particularly relevant when a claimant . . . has some days that are better than others." (internal quotation marks and brackets omitted)). By excessively relying on how Mancebo presented on a single day, the ALJ's opinion may have missed the forest for the trees.

Taken together, the ALJ erred by failing to consider Mancebo's claims of debilitating flare-ups and improperly discounting her treating physician's opinion. The Court does not hold that Mancebo is disabled or that she is entitled to social security benefits. The Court holds only that the case should be remanded to the Commissioner for further proceedings that fully consider

7

the effect of Mancebo's flare-ups and assign the proper weight to the various medical opinions of her doctors.

## IV. Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is DENIED. Pursuant to 42 U.S.C. § 405(g), the case is remanded to the Commissioner for further proceedings consistent with this Opinion and Order. The Clerk of Court is directed to close the motion at Docket Number 10 and to close this case.

SO ORDERED.

Dated: September 29, 2017
New York, New York

_____
J. PAUL OETKEN
United States District Judge

*COPY MAILED TO PRO SE PARTY BY CHAMBERS*